**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

LATRICIA E. GOODWIN,

     Plaintiff,

v.            CIVIL ACTION NO.   5:16-cv-10501

BRANCH BANKING AND TRUST
COMPANY,

     Defendant.


**MEMORANDUM OPINION AND ORDER**


The Court has reviewed the *Defendant's Motion to Compel Arbitration and to Strike* (Document 5) and *Memorandum of Law in Support* (Document 6), the *Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration and to Strike* (Document 7), and the Defendant's *Reply in Further Support of Defendant's Motion to Compel Arbitration and to Strike* (Document 10), as well as all attached exhibits.   For the reasons stated herein, the Court finds that the arbitration clause is unconscionable and unenforceable.


**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Latricia Goodwin, on behalf of herself and a class of similarly-situated individuals, initiated this action with a *Complaint* (Document 1-1) filed in the Circuit Court of Raleigh County, West Virginia, on September 19, 2016.   Ms. Goodwin fell behind on her mortgage payments after her husband died.   She alleges that BB&T's debt collection communications, including letters and telephone calls, stated that she would be charged attorneys'

fees and foreclosure costs.   Ms. Goodwin asserts that the West Virginia Consumer Credit Protection Act bars lenders from collecting or attempting to collect such fees.   The proposed class consists of West Virginia citizens with loans serviced by BB&T who received similar collection letters.

The Defendant, Branch Banking and Trust Company (BB&T), removed the action to this Court on November 3, 2016, and moved to compel arbitration and strike the class allegations on November 10, 2016.   It cites the arbitration clause contained on the fourth and final page of the parties' "Retail Note and Security Agreement" (Loan Agreement), which provides in full:

> Any unresolvable controversy or claim between us including but not limited to those arising out of or relating to this instrument, agreement or document or any related instruments, agreements, or documents shall be determined by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of J.A.M.S. / Endispute or any successor thereof ("J.A.M.S."), and the rules set forth herein.   Judgment upon any arbitration award may be entered in any court having jurisdiction.   The arbitration award shall include (1) a provision that the prevailing party in such arbitration shall recover its costs of the arbitration and reasonable attorneys' fees from the other party; and (2) the amount of such costs and fees.
>
> Arbitration hearings will be held in West Virginia in a mutually agreed city in the county in which I reside or the county in which the contract was entered into.   The arbitration shall be administered by J.A.M.S., who will appoint one (1) arbitrator who shall be a retired judge or retired attorney experienced in bank lending contracts.   All arbitration hearings will be commenced within 90 days of the other party's receipt of written demand for arbitration; further, the arbitrator only shall be permitted, upon a showing of cause, to extend the commencement of such hearing for up to an additional 60 days.   Any controversy or claim subject to this arbitration provision not submitted to arbitration within one (1) year after such cause of action has accrued shall be deemed barred, notwithstanding any longer statute of limitations available at law. Notwithstanding the foregoing, unless previously arbitrated in the event of any default in an obligation I owe you, you may file a

2

civil action against me to collect amounts owed by me to you at any time within three (3) years from the last event of default.

Nothing in this arbitration provision shall be deemed to (1) Permit the arbitration of a controversy or claim (even identical) with another person or permit class-wide arbitration; or (2) limit the applicability of any otherwise applicable waivers contained in this instrument, agreement, or document; or (3) be a waiver by you of the protection afforded to it by otherwise applicable federal or state law; or (4) limit your right (a) to exercise self-help remedies against me such as (but not limited to ) setoff; (b) to institute and maintain foreclosure or sale against any personal property collateral; or (c) to petition a court for provisional or ancillary remedies such as (but not limited to) injunctive relief or writ of possession.   You may exercise such self-help rights, foreclosure upon such property, or obtain such provisional or ancillary remedies before, during, or after the pendency of any arbitration proceedings brought pursuant to this instrument, agreement, or document.   Neither this exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

(Loan Agreement, att'd as Def.'s Ex. A) (Document 5-1.)   Ms. Goodwin and her husband signed the signature line on the second page of the contract, which contains language incorporating the remaining provisions by reference.   Briefing on the motion to compel arbitration is complete.

## APPLICABLE LAW

The Federal Arbitration Act (FAA) provides that:

A written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction….shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.   Federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles.   *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

3

Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (internal citation omitted).

Sections 3 and 4 of the FAA grant federal courts authority to compel arbitration and issue a stay upon the motion of one of the parties to the agreement.

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks omitted).   Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state.   *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998).   A district court must "engage in a limited review to ensure that the dispute is arbitrable-i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."   *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir.1997) (citations and quotation marks omitted).   To challenge the validity of an arbitration clause within a contract a party must specifically challenge the arbitration clause, rather than the contract as a whole.   *See Buckeye Check Cashing, Inc,* 546 U.S. 440, 445 (2006).   The scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration."   *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

In West Virginia, unconscionability provides a defense against enforcement of a contract. An "overall and gross imbalance, one-sidedness or lop-sidedness" may support a finding of unconscionability, "taking into consideration all of the facts and circumstances of a particular case."   Syl. Pt. 4, *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 220–22 (W. Va. 2012).[1] Factors include "the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." *Id.* at Syl. Pt. 6 (internal quotation marks and citations omitted).   The party challenging a contract provision for unconscionability bears the burden of proof on that issue.   *Nationstar Mortg., LLC v. West*, 237 W. Va. 84, 785 S.E.2d 634, 638 (2016) (citing *Brown I* at 284); *U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC*, 119 F. Supp. 3d 512, 528 (S.D.W. Va. 2015) (Johnston, J.) (same).

Courts must find both procedural and substantive unconscionability, but "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa."   *Brown II*, 729 S.E.2d, at Syl. Pt. 9 (internal quotation marks and citations omitted).   "Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary

---

1 The Court has cited to *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217 (W. Va. 2012) (*Brown II*), which was decided on remand from the United States Supreme Court.   The West Virginia Supreme Court of Appeals decided *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 260 (W. Va. 2011) (*Brown I*), which comprehensively set forth West Virginia law with respect to alleged unconscionability in the context of arbitration clauses.   The United States Supreme Court vacated the judgment in a per curiam opinion, finding that the West Virginia Supreme Court's holding, that "all predispute arbitration agreements that apply to claims alleging personal injury or wrongful death against nursing homes" were unenforceable, was contrary to controlling federal precedent interpreting the FAA.   *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012).   The West Virginia Supreme Court of Appeals overruled *Brown I* only as to the specific holding invalidated by the Supreme Court, and did not "alter [its] original analysis of West Virginia's common law of contracts" or the "doctrine of unconscionability …explicated in *Brown I*."   *Brown II* at 388.   The relevant syllabus points were re-numbered.   For ease of reference, the Court has excluded quotation marks and citations to *Brown I*, and directly cited *Brown II*.

meeting of the minds of the parties, considering all the circumstances surrounding the transaction." *Id.* at Syl. Pt. 10.   Factors to consider include "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract."   *Id.*   Substantive unconscionability involves unfair or one-sided contract terms.   "The factors to be weighed…[include] the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns."   *Id.* at Syl. Pt. 12.

Furthermore, the West Virginia Supreme Court cautioned courts to scrutinize contracts of adhesion carefully, particularly to the extent they include provisions that would deter enforcement and vindication of rights, protections, relief, and remedies otherwise available under the law.   *Id.* at Syl. Pt. 13.   "A contract of adhesion should receive greater scrutiny that a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person."   *Id.* at Syl. Pt. 11.

## DISCUSSION

BB&T moves to enforce arbitration and stay this matter, arguing that Ms. Goodwin's claims fall within the arbitration clause.   BB&T further requests that the class allegations be stricken, as the arbitration agreement does not permit consolidated or class claims.

In response, Ms. Goodwin asserts that the arbitration clause contained in the Loan Agreement is unconscionable and should not be enforced.   She argues that the contract is adhesive; she had no opportunity to alter terms; the arbitration provision is on page four, while she signed only on page two; she is inexperienced and unsophisticated in financial matters; and she

signed in a rushed environment with no explanation of contract terms.   In alleging substantive unconscionability, she cites the provisions requiring the losing party to pay all costs and attorney fees (which, she notes, alters the fee-shifting provisions of the WVCCPA), the requirement that the arbitrator be experienced in bank lending contracts, the relatively brief ninety-day pre-hearing investigation period, and the lack of mutuality.   Ms. Goodwin avers that she would have to abandon her claim rather than risk paying BB&T's arbitration expenses in the event the arbitrator ruled against her.   She emphasizes the lack of mutuality: (a) the statute of limitations provision reduces her statute of limitations to one year, but permits BB&T to initiate a debt collection action within three years; and (b) BB&T reserved its right to seek remedies outside the arbitration scheme, including to exercise self-help remedies, institute foreclosure actions, and seek injunctive relief or a writ of possession in court, before, during, or after arbitration proceedings.   Ms. Goodwin argues that this matter should proceed as a class action in federal court, pursuant to the Federal Rules of Civil Procedure.

BB&T argues in reply that Ms. Goodwin cannot show that the Loan Agreement was procedurally unconscionable, as prior cases have permitted enforcement of contracts of adhesion signed by unsophisticated consumers without explanation of the terms.   Absent procedural unconscionability, BB&T argues, the arbitration clause must be enforced and the Court should not reach its substantive provisions.   However, should the Court consider substantive unconscionability, BB&T argues that the provisions cited by the Plaintiff do not render the arbitration clause unconscionable.   BB&T argues that the Plaintiff is not deprived of any statutorily-available remedy because provisions granting the prevailing party recovery of fees have been permitted in previous cases, and the WVCCPA's fee-shifting provision is discretionary.

BB&T further rejects the argument that an arbitrator experienced in bank lending contracts, and appointed by J.A.M.S., would be biased, asserting that the language "simply express[es] a desire that the arbitrator have some general knowledge of the subject matter." (Reply at 11.) BB&T further argues that the ninety-day pre-hearing time period is sufficient to permit the Plaintiff to develop her claims. BB&T asserts that the version of the WVCCPA in effect at the time the parties entered into the Loan Agreement had the same one-year statute of limitations for consumer loans set forth in the arbitration clause. Finally, BB&T argues that preserving its "rights to use the courts to effect foreclosure or self-help remedies…is not uncommon and does not render the provision substantively unconscionable." (*Id.* at 17.)

There is no dispute here that the standard set forth in *Adkins* for moving to compel arbitration is met. Therefore, the Court will focus on the asserted unconscionability of the arbitration clause in the Loan Agreement. The parties also agree that the Loan Agreement is a contract of adhesion, which the West Virginia Supreme Court has held necessitates additional scrutiny. However, "finding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E.2d 372, 389 (W. Va. 2013) (quoting from *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 273 (2002)). As discussed above, West Virginia precedent requires that both procedural and substantive unconscionability be present, but not necessarily to the same degree. Courts must consider all circumstances to appropriately weigh whether a contract provision is so unconscionable that it cannot be enforced.

The Goodwins did not have the opportunity to alter terms of the Loan Agreement or to opt out of the arbitration clause without foregoing the offered mortgage.   Ms. Goodwin is a financially unsophisticated consumer.   BB&T is a large national lender with significant experience in lending contracts, and had the advantage of drafting the Loan Agreement.   The arbitration clause was not hidden, but did appear two pages after the only signature line in the contract, as an incorporated term.   Ms. Goodwin signed in a rushed environment, as is often the case for home loans. *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 641 (W.Va. 2016) ("Nothing about the circumstances of the closing, which frankly comports with the *quotidianus* reality of real estate closings—hurried document execution with minimal comprehension by the signatories—suggests that the agreement is unenforceable based on principles of fairness").   These factors alone would not render an otherwise commercially reasonable arbitration clause unenforceable.   They do provide sufficient evidence of procedural unconscionability, however, to render a commercially *unreasonable*, and substantively unconscionable, arbitration clause unenforceable.   *Id.* at 639 (emphasizing the "reasonable expectations of an ordinary person" as a factor in determining whether "principles of fairness" should preclude enforcement of an adhesion contract).

The arbitration clause in the Loan Agreement heavily favors BB&T's interests and position over that of the borrower.   While borrowers are subject to a one year statute of limitations, BB&T may bring a collection action within three years.[2]   Borrowers must arbitrate all claims, but BB&T may bring "a civil action" to collect debts, and reserves the right to exercise self-help remedies, to

---

2 BB&T argues that the one-year statute of limitations is the same as that provided in the relevant WVCCPA provision at the time.   However, the arbitration clause does not set a statute of limitations for specific causes of action—it instead sets a one year statute of limitation "notwithstanding any longer statute of limitations available at law," but permits BB&T to "file a civil action…to collect amounts owed…at any time within three years from the last event of default."   (Loan Agreement at 4.)

institute foreclosure proceedings, and to petition a court for provisional or ancillary remedies such as injunctive relief or writ of possession.  (Loan Agreement at 4.)  "[A] provision in a contract that lacks mutuality—that is, an obligation that could be called unilateral, unbalanced, or non-reciprocal—may lead a court to find the provision is so lop-sided and unfair that, as a matter of equity, the provision should not be enforced."  *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 558 (W. Va. 2012).  Though full bilaterality is not required, and the West Virginia Supreme Court has recognized that lenders may except foreclosure and receivership from arbitration clauses, the one-sidedness here extends further than that in *Nationstar*.  *Nationstar Mortg., LLC v. West*, 785 S.E.2d at 642.  The Court finds the provisions at issue here more akin to those in *Arnold v. United Companies Lending Corporation*.  Therein, the court held that an arbitration provision in a mortgage agreement that permitted the lender to pursue collection actions, foreclosure proceedings, or other proceedings seeking to acquire title to the secured property was unconscionable, where the borrowers were unsophisticated and were not offered meaningful alternatives.  *Arnold v. United Companies Lending Corp.*, 511 S.E.2d 854, 860–62 (W. Va. 1998) *overruled in part on other grounds by Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550 (W. Va. 2012) (the *Dan Ryan* court overruled *Arnold* to the extent it stated a *per se* rule applicable only to arbitration agreements, but approved the holding in that case that "the overly one-sidedness of the arbitration provision rendered the provision unconscionable.").

Additional provisions have the practical effect of disfavoring and discouraging borrowers from pursuing claims in arbitration.  The fee-shifting provision, with mandatory language requiring the losing party to pay all costs and fees, including the attorneys' fees for the other party, constitutes a significant deterrent for borrowers without the financial resources to pay such an

award.   Ms. Goodwin stated that she would not bring her claim if she were required to risk paying those costs in the event of an adverse ruling.   Specifying that the arbitrator be experienced in bank lending contracts ensures some level of subject matter expertise—but, unlike a provision simply requiring subject matter expertise, it also excludes attorneys with a background in consumer protection.[3]   The inability to bring class claims and the shortened discovery period alter the nature of the permissible litigation, and discourage consumer suits with relatively small potential individual awards, but do not constitute unconscionable terms.   Thus, even if the largely unilateral nature of the arbitration clause is not itself sufficient to find the clause unenforceable, in view of the remaining terms and conditions, as well as the procedural inequities, the arbitration clause as a whole is so unconscionable that it cannot justly be enforced.[4]   Collectively, the terms are well beyond the reasonable expectations of an ordinary person.   Thus, the Court finds that the Defendant's motion to compel arbitration should be denied.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Compel Arbitration and to Strike* (Document 5) be **DENIED**.   The

---

3 In short, attorneys who represented lenders prior to retirement would qualify, while those who represented consumers like the Plaintiff would not, despite their equal familiarity with the subject matter of the instant claims. That does not mean the arbitrator is likely to be biased, nor would it be sufficient, standing alone, to create substantive unconscionability.   It is, however, an additional weight that tilts the arbitration provision in favor of BB&T.

4 In finding the arbitration clause unenforceable, the Court has considered the options set forth in *Brown II*:   "If a court, as a matter of law, finds a contract or any clause of a contract to be unconscionable, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result."   Syl. Pt. 8. *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 220–22 (W. Va. 2012).   Because the lack of mutuality of the obligation to arbitrate cannot readily be remedied by severing or limiting its application, and because the Court has found that multiple unfair or biased provisions favoring BB&T combine to render the arbitration clause unconscionable, the Court concludes that refusing to enforce the arbitration clause in its entirety is the most appropriate remedy.

Court further **ORDERS** that the *Defendant's Motion to Stay Pending the Court's Resolution of the Motion to Compel Arbitration* (Document 8) be **TERMINATED AS MOOT.**

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER:        March 10, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA